UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMEEL PADILLA,

                        Petitioner,

        v.

ALYSSA PRICE, CHERLY STRANGE,

                        Respondents.

CASE NO. 2:21-CV-518-JCC-DWC

REPORT AND RECOMMENDATION

Noting Date: August 27, 2021

The District Court has referred this action to United States Magistrate Judge David W. Christel. Petitioner Jameel Padilla, through retained counsel James R. Dixon, filed his federal habeas Petition ("Petition"), pursuant to 28 U.S.C. § 2254, seeking relief from his state court convictions and sentences. *See* Dkt. 1. The Court concludes the state court's adjudication of Grounds 1 – 4 was not contrary to, or an unreasonable application of, clearly established federal law. Therefore, the undersigned recommends the Petition be denied and a certificate of appealability not be issued.

1   **I.    Background**

2       A.  Factual Background

3       Petitioner is challenging Snohomish County Superior Court convictions and judgments

4   arising from five offenses. *See* Dkt. 1. Petitioner's first count was severed from counts 2 – 5. *See*

5   *id*. The Supreme Court of Washington ("state supreme court") summarized the facts supporting

6   count 1 of Petitioner's underlying case as follows:

7       K.M., a nine-year-old living in California, received a message on her Facebook
        page. At the time, her profile picture showed her at eight-and-a-half years old. The
8       message, sent from "Jim Wilcox," included sexually explicit texts. Originally, K.M.
        thought these messages were from a family friend, but quickly realized she was
9       mistaken.

10      A relevant portion of the conversation includes:
        [Wilcox]: "are you alone?" ....
11      [K.M.]: "ya y?" ....
        [Wilcox]: "cause im jerking off to you. what are you wearing." ....
12      [Wilcox]: "you are so pretty, my cock is still hard for you." ....
        [K.M.]: "shut up I am 9!!!!!!!!!!!!" ....
13      [Wilcox]: "suck it" ....
        [K.M.]: "no u r gross I am 9 so back off" ....
14

15      Concerned and confused, K.M. blocked "Wilcox" and told her father about the
        conversation. K.M.'s father reported the messages to California law enforcement
16      and provided screenshots of the conversation. Investigating officers discovered the
        Internet protocol (IP) address for the computer used to access the "Jim Wilcox"
        Facebook account was associated with Padilla, who lived in Everett, Washington.
17      At the time, Padilla was 35 years old.

18      Everett police seized Padilla's computer pursuant to a valid search warrant. A
        search of the computer revealed Padilla's various Facebook aliases, including the
19      account of "Jim Wilcox." Initially, Padilla did not admit or deny that he used the
        "Wilcox" account, but he did admit to engaging in similar conversations via
20      Facebook. A forensic evaluation of Padilla's computer also revealed that Padilla
        was logged on every time K.M. received a message from the "Wilcox" account.
21      Although officers were not able to find the chats with K.M. on Padilla's computer,
        they had enough evidence to link Padilla to the communications, including
22      identically phrased messages to other minors.

23

24

1    Padilla was charged and convicted of communication with a minor for immoral
     purposes. The court sentenced him to 75 days of confinement and 12 months of
2    community custody, imposing multiple conditions.

3    *State v. Padilla*, 190 Wash. 2d 672, 675–77, 416 P.3d 712, 714–15 (2018) (footnotes and internal

4    citations omitted); *see also* Dkt. 8-2, pp. 181-83.

5         The Court of Appeals for the State of Washington ("state court of appeals") summarized

6    the facts related to counts 2 – 5 of Petitioner's underlying case as follows:

7    In April 2012, a mother and father reported to the Arroya Grande Police
     Department that an unknown individual had sent sexually explicit messages to their
8    nine-year-old daughter on Facebook. The detectives were informed that the
     individual used the profile name "Jim Wilcox." While the detectives were
9    investigating the complaint, they discovered that the Internet Protocol Address for
     the computer used to access the Facebook account was associated with Jameel
10   Padilla of Everett, Washington.

11   In September 2012, Everett Police executed a search warrant at Padilla's home.
     They seized a laptop computer from the home. A forensic examination of the
12   computer revealed approximately one hundred sexually explicit photos of young
     girls in the unallocated space in the computer's memory. It revealed videos of
13   infants and children engaged in sexually explicit conduct. The examination also
     revealed internet search queries that Padilla initiated including: "child porn
14   Frostwire;" "What makes you a pedophile?;" "Eleven year old raped by 20 men;"
     "Little girl sucking;" and "How to delete stuff from an unallocated space."
15   Additionally, the examination revealed chat communications where the user was
     seeking content of children engaged in sexually explicit conduct.
16
     Padilla was charged with two counts of viewing depictions of a minor engaged in
17   sexually explicit conduct in the first degree, and two counts of the same offense in
     the second degree. The charging document alleged that Padilla intentionally viewed
18   over the internet pictures of minors engaged in sexually explicit conduct. The jury
     instructions for these counts mirrored this language. The charging document did
19   not specifically allege, nor did the jury instructions expressly require the State to
     prove, that Padilla knew he was viewing minors. Padilla did not object to the
20   information or jury instructions on this, or any other, basis. The jury convicted him
     on all four counts.
21
     Dkt. 8-2, pp. 267-69 (footnotes omitted).
22

23

24

B. <u>Procedural Background</u>

1. *Direct Appeal*

Petitioner first challenged count 1 of his Snohomish County Superior Court convictions and judgments on direct appeal. *See* Dkt. 8-2, p. 19. The state court of appeals affirmed Petitioner's conviction and judgment on count 1; however, the state court of appeals accepted the State's concession that one of Petitioner's conditions of community custody was unconstitutionally vague. *Id*. at pp. 93-102. The state court of appeals remanded the case to strike the unlawful condition, but otherwise affirmed his conviction and judgment as to count 1. *Id*. Petitioner sought discretionary review by the state supreme court. *See id*. at pp. 104-35. The state supreme court granted discretionary review limited to a community custody condition issue. *Id*. at 137. On May 10, 2018, the state supreme court reversed the state court of appeals decision upholding Petitioner's community custody condition prohibiting access to and possession of pornographic materials as unconstitutionally vague. *Id*. at pp. 180-195. The state supreme court issued its mandate on June 4, 2018. *Id*. at p. 197.

Separately, Petitioner challenged counts 2-5 of his Snohomish County Superior Court convictions and judgments on direct appeal. *See* Dkt. 8-2, p. 200. The state court of appeals remanded the case to strike an unconstitutionally vague community custody condition, but otherwise affirmed Petitioner's judgment and sentence. *Id*. at pp. 266-73. Petitioner sought discretionary review by the state supreme court. *See id*. at pp. 275-309. The state supreme court denied discretionary review without comment on November 9, 2017. *Id*. at p. 311. The state court of appeals issued its mandate on December 15, 2017. *Id*. at p. 313.

2.  *Personal Restraint Petition*

On December 17, 2018, Petitioner filed a personal restraint petition ("PRP") seeking state post-conviction relief. *See* Dkt. 8-3, pp. 2-91. The state court of appeals dismissed the PRP on March 10, 2020. *Id*. at pp. 147-53. Petitioner sought discretionary review from the state supreme court, which the commissioner of the state supreme court denied on November 2, 2020. *Id*. at pp. 155-200, 212-15. The state court of appeals issued the certificate of finality on March 9, 2021. *Id*. at p. 217.

3.  *Federal Petition*

On April 16, 2021, Petitioner filed his Petition (Dkt. 1) raising the following grounds for relief:

1. The State relied upon evidence obtained from a search warrant which lacked the necessary particularity, thus violating Petitioner's Fourth Amendment Right to be free of unlawful searches.
2. Petitioner was denied his Sixth Amendment Right to effective assistance of counsel when his attorney failed to challenge the invalid search warrant.
3. Petitioner's First Amendment and Fifth Amendment Rights were violated when RCW 9.68A.075 was interpreted as not requiring the State to prove knowledge that the person depicted in the sexually explicit picture was a minor.
4. Petitioner's Sixth Amendment Rights were violated when the State's charging document omitted an essential element of the crime of communicating with a minor for immoral purposes.

Dkt. 1. On June 9, 2021, Respondent filed, and served on Petitioner's counsel through electronic means, an Answer and Memorandum of Authorities and a Submission of Relevant State Court Record. Dkt. 7, 8. In the Answer, Respondent asserted the state court's adjudication of the grounds raised in the Petition was not contrary to, or an unreasonable application of, clearly established federal law. *Id*. Petitioner did not file a response to the Answer, which was due June 28, 2021.

## II.    Discussion

Respondent maintains the state courts' adjudication of Grounds 1 – 4 was not contrary to, or an unreasonable application of, clearly established federal law. Dkt. 7.

A.  Standard of Review

Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." In interpreting this portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where

it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529 U.S. at 407).

The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of state court decisions under §2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

B. Ground 1: Unlawful Search

Petitioner contends his Fourth Amendment rights were violated when the State relied on evidence obtained from a search warrant that lacked the necessary particularity. Dkt. 1, pp. 11-16.

"The Fourth Amendment assures the 'right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.'" *Stone v. Powell*, 428 U.S. 465, 482 (1976). Courts will exclude evidence in order to effectuate these rights. *Id.* However, the exclusionary rule itself is not a personal constitutional right. *Id.* at 486. The rule is a judicially created remedial device designed to deter Fourth Amendment violations by law enforcement personnel rather than "to redress the injury to the privacy of the victim of the search or seizure, for any '[r]eparation comes too late.'" *Id.* at 486 (quoting *Linkletter v. Walker*, 381 U.S. 618, 637 (1965)). Because of this, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Powell*, 428 U.S. at 494; *see also Moormann v. Schriro*, 426 F.3d 1044, 1053 (9th Cir. 2005).

1    The federal court's inquiry is whether the petitioner had the opportunity to litigate his

2    claim, not whether he did or even whether the claim was correctly decided. *Ortiz–Sandoval v.*

3    *Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) (citing *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir.

4    1990)); *Locks v. Sumner*, 703 F.2d 403, 408 (9th Cir. 1983). To obtain relief, a petitioner must

5    demonstrate the state courts have not afforded him a full and fair opportunity to litigate his

6    Fourth Amendment claims. *Woolery v. Arave*, 8 F.3d 1325, 1328 (9th Cir.1993). If a state

7    provides the processes whereby a defendant can obtain full and fair litigation of a Fourth

8    Amendment claim, then the petition will be denied whether or not the defendant employs those

9    processes. *See Gordon*, 895 F.2d at 613–14 (holding that the determinative factor for the court

10   was that California law allowed for motion to suppress evidence, not whether defendant litigated

11   upon such grounds).

12   Here, Petitioner had an opportunity to litigate his unlawful search and seizure claim in the

13   state courts. "The Washington Criminal Rules for Superior Court provide for a full and fair

14   opportunity to litigate Fourth Amendment claims." *See Hunter v. Miller-Stout*, 2013 WL

15   1966168, at *14 (W.D. Wash. Apr. 23, 2013), *report and recommendation adopted*, 2013 WL

16   1964928 (W.D. Wash. May 10, 2013); *see also* Washington State Criminal Procedure Rule CrR

17   3.6. Furthermore, Petitioner had an opportunity to raise the Fourth Amendment claims on direct

18   appeal or in a PRP. Indeed, Petitioner raised this ground in his PRP. *See* Dkt. 8-3, pp. 19-26; *see*

19   *also* Dkt. 1, p. 16.

20   In considering Petitioner's Fourth Amendment claims, the state court of appeals stated:

21   Padilla argues that the 2012 search warrant authorizing the search and seizure of
     his computer and cell phone was unconstitutionally overbroad.

22

23   The search warrant authorized Snohomish County law enforcement to search
     Padilla's apartment and to seize "all computer hardware" and "any data that may
     be kept on any computer related storage device related to the crime of

24

Communicating with a Minor for Immoral Purpose" including phones, videos, internet files, and electronic communications. The warrant also authorized the seizure of any other evidence of the crime of communication of a minor for immoral purposes, including "books, magazines, catalogs, photographs, film, notebooks, diaries, or other documents."

Both the Fourth Amendment and article I, section 7 require that a search warrant describe with particularity the place to be searched and the persons or things to be seized. *State v. Perrone*, 119 Wn.2d 538, 545, 834 P.2d 611 (1992). The particularity requirement prevents general and overbroad searches. *Perrone*, 119 Wn.2d at 545. A search warrant's description of the place to be searched and property to be seized is sufficiently particular if "it is as specific as the circumstances and the nature of the activity under investigation permit." *Perrone*, 119 Wn.2d at 547. A generic or general description of items to be seized may be sufficient if probable cause is shown and "a more specific description is impossible" with the information known to law enforcement at the time. *Perrone*, 119 Wn.2d at 547. Search warrants must be "tested and interpreted in a common sense, practical manner, rather than in a hypertechnical sense." *Perrone*, 119 Wn.2d at 549.

Padilla contends that the warrant's reference to the crime of communicating with a minor for immoral purposes provided no "meaningful guidance" for law enforcement and points to the absence of specific information about his alleged crimes in the warrant. However, despite Padilla's claim to the contrary, because the affidavit of probable cause supporting the warrant was attached and incorporated by reference in the warrant, the determination of the particularity requirement is not limited to the warrant itself. *See State v. Riley*, 121 Wn.2d 22, 29, 846 P.2d 1365 (1993); *see also Groh v. Ramirez*, 540 U.S. 551, 557-58, 124 S.Ct. 1284, 157 L.Ed. 2d 1068 (2004) (an affidavit may cure an overbroad warrant where the affidavit and the search warrant are physically attached, and the warrant expressly refers to the affidavit and incorporates it by reference).

The detailed allegations in the affidavit submitted in support of the search warrant easily satisfy the particularity requirement. The affidavit described the specific conduct under investigation and the time frame. It included the precise details of Padilla's sexually explicit communications with a then nine-year old girl in California, and information connecting him with the Everett apartment, and about aliases, email, and social media accounts associated with him. The affidavit stated that additional victims had been identified in three states. Based on the factual allegations, the affidavit sought to seize and then conduct forensic searches of Padilla's computer and other internet capable devices and electronic storage devises search for evidence related to his sexually explicit communication with minors in March and April 2012. The attachment and incorporation of the affidavit setting forth the factual basis for the investigation distinguishes this case from *State v McKee*, 3 Wn. App. 2d 11, 24-25, 413 P.3d 1049 (2018), rev'd on other grounds, 193 Wn.2d 271, 438 P.3d 528 (2019).

1

2    Even if paragraph H of the warrant, authorizing seizure of printed publications, photographs, films, notebooks, and other documents was overbroad, the State's

3    evidence against Padilla consisted of data extracted from his computer storage devices. And that provision is severable. If a search warrant includes a provision

4    that is overly broad or insufficiently particular, "[u]nder the severability doctrine, 'infirmity of part of a warrant requires the suppression of evidence seized pursuant

5    to that part of the warrant' but does not require suppression of anything seized pursuant to valid parts of the warrant." *Perrone*, 119 Wn.2d at 556 (quoting *United*

6    *States v. Fitzgerald*, 724 F.2d 633, 637 (8th Cir. 1983)). The doctrine applies when a warrant includes both items that are supported by probable cause and described

7    with particularity and items that are not, so long as a meaningful separation" can be made on a "logical and reasonable basis." *Perrone*, 119 Wn.2d at 560. Here,

8    paragraph H is separate from paragraphs A and E, which authorized the search and seizure of computer hardware, internet capable devices and electronic storage

9    devices. There is no dispute that the warrant lawfully authorized entry into Padilla's residence or that the warrant described these items, for which there was probable

10   cause. And there is nothing to suggest that police officers conducted a search beyond the scope of the valid part of the warrant. *See State v. Maddox*, 116 Wn. App. 796, 67 P.3d 1135 (2003), *affirmed*, 152 Wn.2d 499, 98 P.3d 1199 (2004).

11

Dkt. 8-3, pp. 149-52 (footnote omitted).

12

13   As Petitioner had the opportunity to pursue and, in fact, pursued the unlawful search and

14   seizure claim, Ground 1 is not cognizable under § 2254. *See Tisnado v. United States*, 547 F.2d

15   452, 456 (9th Cir. 1976) ("a federal court may not grant either § 2254 or § 2255 habeas corpus

16   relief on the basis that evidence obtained in an unconstitutional search or seizure was introduced,

17   respectively, at a state or federal trial where the defendant was provided an opportunity to litigate

18   fully and fairly his fourth amendment claim before petitioning the federal court for collateral

19   relief"). Accordingly, the Court finds Ground 1 should be denied.

20   C.   Ground 2: Ineffective Assistance of Counsel

In the Petition, Petitioner alleges he received ineffective assistance of counsel when

21   Petitioner's trial counsel failed to challenge the invalid search warrant. Dkt. 1, pp. 16-17.

22   In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court created a two-part

23   test for determining whether a defendant received ineffective assistance of counsel. First, a

24

1  defendant must demonstrate his attorney's performance was deficient, which requires showing

2  "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by

3  the Sixth Amendment." *Id.* at 687. Second, a defendant must demonstrate the deficient

4  performance prejudiced the defense to such a degree the results of the trial cannot be trusted. *Id.*

5          Under the first prong, the reasonableness of an attorney's performance is to be evaluated

6  from counsel's perspective at the time of the alleged error and in light of all the circumstances.

7  *Id.* at 690. The petitioner must carry a heavy burden, as "reviewing courts must indulge a strong

8  presumption that counsel's conduct falls within the wide range of professional assistance; that is,

9  the defendant must overcome the presumption that, under the circumstances, the challenged

10  action might be considered sound trial strategy." *Id.* at 689 (citation omitted).

11          Under the prejudice prong, a petitioner must establish there is a reasonable probability the

12  results would have been different but for counsel's deficient performance. *Kimmelman v.*

13  *Morrison*, 477 U.S. 365, 375 (1986); *Strickland,* 466 U.S. at 696. "A reasonable probability is a

14  probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "[A]

15  court need not determine whether counsel's performance was deficient before examining the

16  prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to

17  dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course

18  should be followed." *Id*. at 697.

19          In determining Petitioner's trial counsel was not ineffective for failing to challenge the

20  allegedly invalid search warrant, the state court of appeals stated:

21          Padilla fails to demonstrate an unlawful search and seizure. Therefore, his claim of
          ineffective assistance of counsel fails.

22  Dkt. 8-3, p. 152.

23

24

1    Petitioner contends his counsel was ineffective for failing to challenge that the search

2  warrant lacked the necessary particularity required for the searches of Padilla's phones and

3  computer. Dkt. 1, p. 16. He states there was no strategic reason for counsel's failure to bring a

4  CrR 3.6 challenge. *Id*.

5    Here, the state court considered the validity of the search warrant and determined the

6  search warrant was valid. *See* Dkt. 8-3, pp. 149-52. As the state court found the search warrant

7  was valid and sufficiently particular, Petitioner has not shown a challenge to the validity of the

8  search warrant had merit. "The failure to raise a meritless legal argument does not constitute

9  ineffective assistance of counsel." *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989)

10  (quotation marks and citation omitted). Further, as the state court found the search warrant was

11  sufficiently particular, Petitioner has not shown there is a reasonable probability any motion

12  challenging the validity of the search warrant or attempting to suppress the evidence obtained

13  during the search would have been granted and the outcome of Petitioner's trial would have

14  changed.

15    Therefore, Petitioner has not shown the state court decision finding his counsel was not

16  ineffective was contrary to, or an unreasonable, application of clearly established federal law, or

17  that it was based on an unreasonable determination of the facts. *See Lowry v. Lewis*, 21 F.3d 344,

18  346–47 (9th Cir. 1994) (to show prejudice, the petitioner "must establish that had the motion [to

19  suppress] been filed, there was a reasonable probability that the evidence would have been

20  suppressed, and the outcome of the trial would have been different had the evidence been

21  suppressed."); *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (the question is not whether

22  counsel's performance had no effect or whether it is possible a reasonable doubt might have been

23  established if counsel acted different, but whether it is "reasonably likely" the result would have

24

1   been different); *see also Lopez v. Ryan*, 2009 WL 3294876, at *23 (D. Ariz. Oct. 14, 2009) ("The

2   record is silent regarding counsel's reasons for not moving to suppress the evidence, and

3   Petitioner cannot overcome the Court's presumption of reasonableness without proffering

4   affirmative evidence of counsel's decision-making process."). Accordingly, the Court finds

5   Ground 2 should be denied.

6      D.  Ground 3: Unconstitutional Statute

7          In Ground 3, Petitioner alleges his First Amendment and Fifth Amendment Rights were

8   violated when RCW 9.68A.075 was interpreted as not requiring the State to prove knowledge

9   that the person depicted in the sexually explicit picture was a minor. Dkt. 1, pp. 17-19.

10  Petitioner's contention is that charging documents and jury instructions did not include the

11  element of "knowledge" and, without the "knowledge" element, the offense could "sweep in

12  speech protected under the First Amendment." *Id.* at p. 18.

13         The First Amendment provides that "Congress shall make no law ... abridging the

14  freedom of speech." The First Amendment protects an individual's right to express unpopular

15  views and to associate with others who share the same viewpoint. *Texas v. Johnson,* 491 U.S.

16  397, 414 (1989). "[A]s a general matter, the First Amendment means that government has no

17  power to restrict expression because of its message, its ideas, its subject matter, or its content."

18  *Ashcroft v. American Civil Liberties Union,* 535 U.S. 564, 573 (2002).

19         Under the First Amendment's overbreadth doctrine, "a law may be invalidated as

20  overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to

21  the statute's plainly legitimate sweep.' " *United States v. Stevens*, 559 U.S. 460, 473 (2010)

22  (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449, n.6

23  (2008)). The "mere fact that one can conceive of some impermissible applications of a statute is

24

1    not sufficient to render it susceptible to an overbreadth challenge." *United States v. Williams*,

2    553 U.S. 285, 303 (2008) (citation and quotation marks omitted); *New York v. Ferber*, 458 U.S.

3    747, 769 (1982) (overbreadth must be "substantial" before statute may be invalidated on its

4    face). "[W]e have vigorously enforced the requirement that a statute's overbreadth be

5    *substantial,* not only in the absolute sense, but also relative to the statute's plainly legitimate

6    sweep.... Invalidation for overbreadth is 'strong medicine' that is not to be 'casually employed.'"

7    *Williams*, 553 U.S. at 292–93 (emphasis in original) (citations omitted).

8            In determining if a statute is overbroad, the Court first construes "the challenged statute;

9    it is impossible to determine whether a statute reaches too far without first knowing what the

10   statute covers." *Williams*, 553 U.S. at 293. A state court's construction of a state statute,

11   including the state court's definition of statutory terms or any narrowing interpretation it has

12   given the statute, is binding on a federal court. *Wisconsin v. Mitchell,* 508 U.S. 476, 483 (1993);

13   *R.A.V. v. St. Paul,* 505 U.S. 377, 381 (1992); s*ee Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a

14   state court's interpretation of state law, including one announced on direct appeal of the

15   challenged conviction, binds a federal court sitting in habeas corpus"); *Hicks v. Feiock*, 485 U.S.

16   624, 629-30 & n.3 (1988) (the federal court is "not at liberty to depart from the state appellate

17   court's resolution of these issues of state law").

18           In determining RCW 9.68A.075 was not overbroad and did not violate Petitioner's rights,

19   the state court of appeals stated:

20           Padilla makes three assignments of error on appeal. The first two concern whether
             we should read into the statute defining the crime of viewing depictions of a minor
21           engaged in sexually explicit conduct (the viewing statute) an additional element of
             knowledge that the person depicted is a minor. Padilla claims that such knowledge
22           is an essential element of the crime and that the charging document and to-convict
             instructions given in this case were deficient because of its omission. . . . .

23

24

REPORT AND RECOMMENDATION - 14

Padilla rests his argument in large part on our decision in *State v. Rosul*, 95 Wn. App. 175, 974 P.2d 916 (1999). In *Rosul*, we considered the statute criminalizing the possession of child pornography (the possession statute). The statute provided, in relevant part, that a person is guilty of possessing child pornography when that person "knowingly possesses visual or printed matter depicting a minor engaged in sexually explicit conduct . . . ." *Id*. at 180; RCW 9.68A.070. We concluded the statute was impermissibly overbroad because, for example, a person delivering a package containing child pornography could knowingly possess the package and yet be unaware of its contents. *Id*. at 182. Thus, applying the statute as written, a person engaged in "clearly innocent conduct" could be in violation of it. *Id*. at 183. Accordingly, we construed the statute to require "a showing that the defendant was aware not only of possession, but also of the general nature of the material he or she possessed." *Id*. at 185.

Padilla argues that the possession statute and the viewing statute are similar and that, as with the possession statute, in order to save the viewing statute from being impermissibly overbroad, we must imply an element of knowledge that the person depicted was a minor. But, as we observed in *Rosul*, a statute is only impermissibly overbroad if it "will significantly compromise recognized First Amendment protections of persons not before the court." *Id*. at 182. To support his claim that the viewing statute is substantially overbroad, Padilla must "demonstrate from the text of [the challenged law] and from actual fact that a substantial number of instances exist in which the [l]aw cannot be applied constitutionally." *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14, 108 S. Ct. 2225, 101 L. Ed. 2d 1 (1988). He fails to carry this burden.

The viewing statute states, in relevant part:

> (1) A person who intentionally views over the internet visual or printed matter depicting a minor engaged in sexually explicit conduct as defined in RCW 9.68A.011(4) (a) through (e) is guilty of viewing depictions of a minor engaged in sexually explicit conduct in the first degree . . . .

> (2) A person who intentionally views over the internet visual or printed matter depicting a minor engaged in sexually explicit conduct as defined in RCW 9.68A.011(4) (f) or (g) is guilty of viewing depictions of a minor engaged in sexually explicit conduct in the second degree . . . .

> (3) . . . The state must prove beyond a reasonable doubt that the viewing was initiated by the user of the computer where the viewing occurred.

RCW 9.68A.075. Thus, in order to sustain a conviction, this statute requires the prosecution to prove that a defendant: (1) intentionally viewed visual or printed material over the internet; (2) that the material viewed depicted a minor engaged in sexually explicit conduct; and (3) that the viewing was initiated by the defendant.

Under a plain reading of the statute's language, we cannot see how the statute impermissibly jeopardizes First Amendment protections. Nor does Padilla explain how the statute criminalizes innocent conduct when it only reaches individuals who initiate an internet session intending to view material that depicts a minor engaged in explicit sexual conduct and who, then, in fact, view the very material sought. Unlike the possession statute, the viewing statute presents no identifiable risk of sweeping within its prohibitions innocent persons engaged in constitutionally protected activities.

We conclude that Padilla has not shown that the statute is impermissibly overbroad and reject his argument that we must imply an additional knowledge element to the view statute. And because his claims that the charging document and the to convict instructions are deficient hinge on the success of his overbreadth argument, they also fail.

Dkt. 8-2, pp. 269-72 (footnote and some citations omitted).

Petitioner was convicted of viewing depictions of a minor engaged in sexually explicit conduct in the first and second degree. *See* Dkt. 8-2, p. 2. He does not allege his First Amendment rights were violated or that his conduct was protected by the First Amendment. *See* Dkt. 1. Further, Petitioner fails to provide any examples of when such conduct as described in the statute would result in a violation of a First Amendment right. Petitioner provides nothing more than conclusory allegations that the statute *could* "sweep in speech protected under the First Amendment." *Id*. at p. 18.

Importantly, Petitioner has not identified any Supreme Court decision in which a statute prohibiting viewing a depiction of a minor engaged in sexually explicit conduct and its related jury instruction have been struck down as overly broad or impermissibly vague based on the absence of a more explicit knowledge element. Therefore, Petitioner has not shown that the state court of appeals decision was contrary to, or an unreasonable application of, clearly established law. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, ... it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law. Under the explicit terms of § 2254(d)(1), therefore, relief is

unauthorized." (citation and internal quotation marks omitted)); *Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court ..., it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.' " (citation omitted)).

For these reasons, the Court finds Ground 3 should be denied.

E.   Ground 4: Charging Document was Insufficient

In Ground 4, Petitioner alleges his Sixth Amendment rights were violated when the State's charging document omitted an essential element of the crime of communicating with a minor of immoral purposes. Dkt. 1, pp. 19-20. Petitioner contends the charging document did not include the "non-statutory element that [Petitioner] intended for the communication to reach a minor." *Id*. at 19.

The Sixth Amendment guarantees criminal defendants the right to be informed of the nature of the charges against them so as to permit adequate preparation of a defense. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation ...."); *In re Oliver*, 333 U.S. 257, 273–74 (1948); *Cole v. Arkansas*, 333 U.S. 196, 201 (1948). To determine whether a defendant has received constitutionally adequate notice, a reviewing court looks primarily to the charging document. *See Gautt v. Lewis,* 489 F.3d 993, 1003 (9th Cir. 2007). As the Ninth Circuit has explained, "for purposes of AEDPA's 'clearly established Federal law' requirement, it is 'clearly established' that a criminal defendant has a right, guaranteed by the Sixth Amendment and applied against the states through the Fourteenth Amendment, to be informed of any charges against him, and that a charging document, such as an information, is the means by which such notice is provided." *Id.* at 1004. A charging document is sufficient to inform a defendant of the charges against him if it (1) contains the elements of the offense charged and fairly informs a

defendant of the charge against which he must defend, and, (2) enables a defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States,* 418 U.S. 87, 117 (1974). However, the Ninth Circuit has also "recognized that a defendant can be adequately notified of the nature and cause of the accusation against him by means other than the charging document." *Calderon v. Prunty*, 59 F.3d 1005, 1009 (9th Cir. 1995).

In finding Petitioner received adequate notice of the charges against him, the state court of appeals stated:

> Padilla contends that the State's charging document was constitutionally deficient. He correctly points out that under *State v. Hosier*, 157 Wn.2d 1, 15, 133 P.3d 936 (2006), an essential implied element of the crime of [Communication with a Minor for Immoral Purposes (CMIP)] is that he intended for the communication to reach a minor. Padilla argues that the charging document did not specifically allege this element, and thus, it failed to provide him with proper notice of the charges brought against him.

> . . . .

> The CMIP statute prohibits "communicat[ion] with a minor or with someone the person believes to be a minor for immoral purposes ... through the sending of an electronic communication." RCW 9.68A.090(2). The statute does not explicitly state a requirement that the person must intend for the communication to reach a minor, but our supreme court has held that such a requirement is implied and must be proved in order for the State to obtain a conviction for CMIP. *State v. Hosier*, 157 Wn.2d at 15. Padilla argues that the charging document in this case was deficient because it was missing this implied element.

> When deciding whether a charging document has the necessary facts, we look at the document as a whole with a common sense approach. [*State v.*] *Kjorsvik*, 117 Wn.2d [93,] 109 [(1991)]. A charging document is constitutionally sufficient when, read as a whole and in a common sense manner, an implied essential element can be inferred through a liberal construction in favor of its validity. *Id.* at 110–11. Our first inquiry is whether the nonstatutory element of "intent to reach a minor" can be fairly implied from the language in the charging document. *Id.* at 108.

> In the present case, the charging document tracked the language of the CMIP statute. It read:

COUNT I: <u>COMMUNICATION WITH A MINOR FOR IMMORAL PURPOSES VIA ELECTRONIC COMMUNICATION,</u> committed as follows: That the defendant, on or about the 5th day of March 2012, through the 14th day of April 2012, did communicate with a person under the age of 18 years for immoral purposes through the sending of an electronic communication ....

Clerk's Papers (CP) at 63–64. This language apprised Padilla that he was accused of committing the crime of CMIP and of the following factual allegations: (1) that he communicated by means of an electronic communication; (2) that the communication was for an immoral purpose; and (3) that the communication was with a person under 18 years of age. We fail to see, nor does Padilla explain, how he could have sent an electronic communication to a child and yet not have intended for the communication to reach the child. Liberally construed, the language in the charging document fairly implies the allegation that Padilla intended that the communication reach a minor.

*Kjorsvik*, 117 Wn.2d 93 is instructive. In that case, a defendant challenged his robbery conviction because the State's charging document was missing the implied essential element of "intent to steal." *Id.* at 95–96. The court upheld the defendant's conviction and reasoned that it would be "hard to perceive how the defendant" could have forcefully taken money from the shopkeeper while brandishing a weapon but did not intend to steal the money. *Id.* at 110. Similarly here, because the charging document describes Padilla sending electronic communication to a minor, a fair reading is that through this volitional act, he intended to reach a minor. We conclude that the language of the charging document is sufficient because it contains all the necessary facts to reasonably inform Padilla of the elements of the crime charged.

*Padilla*, 198 Wash. App. 1049 at *1-3; *see also* Dkt. 8-2, pp. 95-98.

Petitioner has not shown, nor does the Court find, that the State failed to adequately place Petitioner on notice of the charges against him. The Amended Information – the charging document -- put Petitioner on notice of the underlying charges. Dkt. 8-1, p. 1134. It stated that Petitioner communicated with a minor through sending an electronic communication for immoral purposes. *Id*. The state court found that a fair reading of the Amended Information is that Petitioner intended his communication to reach a minor and, thus, the charging document reasonably put Petitioner on notice of the elements of the charged crime – including intending for his communications to reach a minor. Moreover, an affidavit of probable cause, which was

1  attached to the Information that included the same CMIP charge, provided additional information

2  that met the elements of the offense. *See* Dkt. 8-1, pp. 1129-30. For example, the affidavit of

3  probable cause included a conversation between Petitioner and the victim showing Petitioner

4  continued to send electronic messages that were sexually explicit after the victim told Petitioner

5  she was nine years old. *See id*. This shows Petitioner's intent to communicate with a minor.

6  Petitioner has not shown, nor does the Court find, any Supreme Court authority that requires a

7  different result from that reached by the state court of appeals. *See Wiggin v. Miller-Stout*, 2015

8  WL 2137319, at *4-6 (W.D. Wash. March 20, 2015) (denying habeas relief where the state

9  court's determination that the element allegedly missing from the charging document – an

10  amended information – was plainly stated in the affidavit of probable cause and the petitioner

11  suffered no prejudice).

12        Petitioner has failed to demonstrate the state court's conclusion that Petitioner's

13  constitutional rights were not violated when the State's charging document allegedly omitted an

14  essential element of the crime of communicating with a minor of immoral purposes was contrary

15  to, or an unreasonable application of, clearly established federal law, or that it was based on an

16  unreasonable determination of the facts. Accordingly, the Court finds Ground 4 should be denied.

17  **III.    Evidentiary Hearing**

18        The decision to hold an evidentiary hearing is committed to the Court's discretion.

19  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a

20  hearing could enable an applicant to prove the petition's factual allegations, which, if true, would

21  entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is

22  available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the

23  state court. *Cullen*, 563 U.S. at 181-82. A hearing is not required if the allegations would not

24

1    entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the

2    record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district

3    court is not required to hold an evidentiary hearing." *Id.* The parties do not request an evidentiary

4    hearing in this case. *See* Dkt. 1, 7. Further, the Court does not find it necessary to hold an

5    evidentiary hearing because, as discussed in this Report and Recommendation, Petitioner's

6    grounds for relief may be resolved on the existing state court record.

7    **IV.    Certificate of Appealability**

8         A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

9    court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

10   from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue

11   . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right."

12   28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason

13   could disagree with the district court's resolution of his constitutional claims or that jurists could

14   conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-*

15   *El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

16        No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or

17   would conclude the issues presented in the Petition should proceed further. Therefore, the Court

18   concludes Petitioner is not entitled to a certificate of appealability with respect to this Petition.

19   **V.    Conclusion**

20        For the above stated reasons, the Court concludes Grounds 1 – 4 – the grounds raised in

21   the Petition – should be denied as Petitioner has not shown the state courts' adjudication of these

22   grounds was contrary to, or an unreasonable application of, clearly established federal law, or

23   that it was based on an unreasonable determination of the facts. The Court also finds an

24

1  evidentiary hearing is not necessary. Therefore, the Court recommends the Petition be denied

2  and a certificate of appealability not be issued.

3          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

4  fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

5  6. Failure to file objections will result in a waiver of those objections for purposes of de novo

6  review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

7  imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

8  August 27, 2021, as noted in the caption.

9          Dated this 11th day of August, 2021.

10

11  _____

12  David W. Christel
    United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24